**W. Christian RIEDEL, Plaintiff-Appellant,**

v.

**BANCAM, S.A., a corporation, Defendant-Appellee.**

No. 85–3517.

United States Court of Appeals, Sixth Circuit.

Argued March 11, 1986.

Decided June 12, 1986.

Rehearing and Rehearing En Banc Denied July 23, 1986.

Charles E. Brown, argued, Alliance, Ohio, for plaintiff-appellant.

Manuel R. Angulo, argued, Curtis, Mallet-Prevost, Colt, & Mosle, New York City, for defendant-appellee.

Before KENNEDY and RYAN, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

This appeal primarily raises the question whether plaintiff-appellant, W. Christian Riedel, can maintain an action for alleged violations of Ohio securities law against defendant-appellee, Bancam, S.A. ("Bancam"), a Mexican bank that the Government of Mexico has nationalized.

This action arose when the Government of Mexico promulgated currency exchange control regulations on August 13, 1982 and subsequently nationalized privately-owned Mexican banks on September 1, 1982. In January 1981, Riedel, a resident of the State of Ohio, asked Unibanco, S.A. ("Unibanco"), a Mexican bank, to transfer $100,-000 to Banca Metropolitana, S.A. ("Bamesa"), another Mexican bank and a predeces-

sor of Bancam, so that Riedel could purchase a dollar-denominated certificate of deposit from Bamesa. On January 6, 1981, Unibanco sent Bamesa a $100,000 check. On that same date, Bamesa issued to Riedel a $100,000 "Certificado de Deposito a Plazo No. 32919" (Certificate of Term Deposit No. 32919) maturing on July 5, 1981 and bearing interest payable monthly at the rate of 20.8857 percent per annum. Dealing with the Mexico City offices of Bamesa or Bancam, Riedel renewed the original certificate on three occasions. On July 6, 1981, Bamesa issued "Certificado de Deposito a Plazo No. 42217" containing a January 5, 1982 maturity date and 22.9426 percent per annum interest rate. On January 1, 1982, Bamesa and another Mexican bank merged, forming Bancam. On January 5, 1982, Bancam, using Bamesa forms, sent Riedel "Deposito de Dolares en Administracion a Plazo Fijo con Tasa Fija No. 68734" (Custody of Dollars Deposited at Fixed Rate for Fixed Period No. 68734) bearing a 18.5914 percent per annum interest rate and maturing on July 5, 1982. On July 6, 1982, Riedel renewed the certificate for the last time and Bancam sent Riedel "Deposito de Dolares en Administracion a Plazo Fijo con Tasa Fija No. 077996" acknowledging an interest rate of 20.1737 percent per annum and a new maturity date of January 20, 1983. Neither Bamesa nor Bancam registered any of the certificates of deposit with either the Securities and Exchange Commission or the Ohio Division of Securities.

On August 13, 1982, the Government of Mexico issued rules governing the payment of bank deposits denominated in foreign currency which prohibited Mexican banks from using dollars to repay the holders of dollar-denominated certificates of deposit. The rules required Mexican banks to pay principal and interest on dollar-denominated deposits in pesos, at a rate of exchange substantially below the financial market exchange rate, rather than in dollars. On September 1, 1982, the Government of Mexico nationalized all privately-owned Mexican banks. Consequently, Bancam, like every other banking institution in

Mexico, became wholly-owned by the Government of Mexico.

At maturity of the final renewal of the certificate of deposit, Bancam sent appellant a check in repayment of his certificate of deposit in the amount of 7,434,000 pesos in accordance with the exchange rate of 74.34 pesos to the dollar, the current legal exchange rate. Since the financial market exchange rate was approximately 149.5 pesos to the dollar, Riedel could only convert the 7,434,000 pesos to $53,276.63. Nevertheless, Riedel cashed the check.

On January 19, 1984, Riedel brought this action in the United States District Court for the Northern District of Ohio alleging violations of federal and Ohio securities laws. Riedel further alleged "breach of contract, denial of rightful possession of property to owner, nondisclosure of potential exposure to damage for property on loan to Defendant, obstruction of justice, [and] coercion." On June 7, 1984, Bancam filed a motion to dismiss the complaint on five grounds. Initially, Bancam argued that section 4(a) of the Foreign Sovereign Immunities Act of 1976 ("FSIA"), Pub.L. No. 94–583, 90 Stat. 2892, codified at 28 U.S.C. § 1604, precluded the District Court from asserting personal or subject matter jurisdiction over the action. Second, Bancam argued that the "act of state doctrine" and the Articles of Agreement of the International Monetary Fund ("Fund Agreement") required dismissal for failure to state a claim upon which the District Court could grant relief because Riedel based the action solely on the Government of Mexico's actions in issuing and enforcing currency exchange rules which required banks to repay dollar-denominated certificates of deposit in pesos. Third, Bancam contended that the complaint failed to state a cause of action because the certificates of deposit were not "securities." Fourth, Bancam argued that the statute of limitations had expired on the federal securities claims. Finally, Bancam argued that it did not receive proper service of process under 28 U.S.C. § 1608(b).

Riedel did not respond to the motion to dismiss. On September 28, 1984, the District Court held that Riedel could not sustain an action under the Securities Act of 1933 because the certificates of deposits were not "securities." In addition, the District Court, apparently referring to the "act of state doctrine," stated that it "must respect the absolute right of the Mexican government to regulate the banks within its borders." On October 9, 1984, Riedel filed a motion for a new trial arguing that the District Court had misapplied the law to the facts alleged in the complaint and had failed to address the breach of contract and the Ohio securities law claims. On June 10, 1985, the District Court denied the motion for a new trial. The District Court concluded that it lacked jurisdiction over the Ohio securities law and breach of contract claims. The District Court stated that 28 U.S.C. § 1332 "does not permit a citizen of this state to sue a foreign government or agency thereof, in a federal district court."

This appeal raises three questions: (1) Whether the FSIA gives the District Court subject matter jurisdiction over Riedel's claims for breach of contract and violations of Ohio Revised Code ("ORC") Chapter 1707 ("Ohio securities law"); (2) Whether the "act of state doctrine" bars Riedel's claims against a Mexican bank that the Government of Mexico has nationalized; and (3) Whether a certificate of deposit issued by a Mexican bank qualifies as a "security" under ORC § 1707.01(B). For the reasons stated below, we hold that the District Court may have had subject matter jurisdiction over Riedel's claims. We also hold that although the "act of state doctrine" bars Riedel's breach of contract claim, it does not bar his Ohio securities law claim. Finally, we hold that a certificate of deposit issued by a Mexican bank

falls within the definition of "security" in ORC § 1707.01(B). Accordingly, we affirm the portion of the District Court's order denying Riedel's motion for a new trial on the breach of contract claim, reverse the portion of the District Court's order denying Riedel's motion for a new trial on the Ohio securities law claim, and remand the Ohio securities law claim to the District Court for further proceedings.

## I.

In this appeal, Riedel does not challenge the District Court's conclusion that the certificates of deposit that Bancam issued are not "securities" under federal securities law. Instead, Riedel argues that the "act of state doctrine" does not bar his breach of contract and Ohio securities law claims. The District Court, however, did not refer to the "act of state doctrine" in denying Riedel's motion for a new trial. In addition to holding, as a matter of law, that the certificate of deposit involved in this case was not a "security" under federal securities law, the District Court ruled that it did not have jurisdiction over Riedel's breach of contract and Ohio securities law claims. The District Court concluded that: "Diversity jurisdiction pursuant to 28 U.S.C. Section 1332, does not permit a citizen of this state to sue a foreign government or agency thereof, in a federal district court."

We agree that the District Court did not have jurisdiction under 28 U.S.C. § 1332 over the breach of contract and Ohio securities law claims. Title 28 U.S.C. § 1332(a)(4)[1] confers original jurisdiction on the district courts over civil actions between a foreign state, as plaintiff, and a citizen of a State. Title 28 U.S.C. § 1332(a)(4), however, does not apply to suits between a citizen of a State and a

---

1. Title 28 U.S.C. § 1332 provides in pertinent part:

    (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

    (1) citizens of different States;

    (2) citizens of a State and citizens or subjects of a foreign state;

    (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

    (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

foreign state, as defendant. A "foreign state," under 28 U.S.C. § 1603(a), "includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state...." Since the Government of Mexico nationalized Bancam on September 1, 1982, Bancam qualifies as an "agency or instrumentality of a foreign state" under 28 U.S.C. § 1603(b)(2). Therefore, this action involves an Ohio citizen and a "foreign state," as a defendant. Consequently, 28 U.S.C. § 1332(a)(4) does not apply. Accordingly, we hold that the District Court properly concluded that it did not have jurisdiction under 28 U.S.C. § 1332 over the breach of contract and Ohio securities law claims.

■ We conclude, however, that the District Court may have had jurisdiction over the breach of contract and Ohio securities law claims under 28 U.S.C. § 1330(a).[2] Although 28 U.S.C. § 1604[3] ordinarily entitles foreign states to immunity from federal jurisdiction, 28 U.S.C. § 1605(a)(2) creates a "commercial activity" exception to this immunity. Title 28 U.S.C. § 1605(a)(2) provides in pertinent part:

A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case ... in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

Accordingly, 28 U.S.C. § 1605(a)(2) applies only when a foreign state's "commercial activity" has the required jurisdictional nexus with the United States. *See, e.g., Callejo v. Bancomer, S.A.,* 764 F.2d 1101, 1107 (5th Cir.1985).

In *Callejo v. Bancomer, S.A., supra,* a case arising from Mexico's promulgation of currency exchange regulations and nationalization of privately-owned Mexican banks, the Callejos brought suit against Bancomer alleging breach of contract and violations of federal and Texas securities laws. The district court dismissed the complaint for lack of jurisdiction concluding that Bancomer was immune from suit under the FSIA. Although the Fifth Circuit affirmed the district court's dismissal on other grounds, the Fifth Circuit concluded that: "The activities of Bancomer that are the basis of the Callejos' complaint—the sale of the certificates of deposit and the subsequent payments in pesos rather than dollars—were commercial in nature." *Id.* at 1109 (footnote omitted). We agree and hold that the sale of the certificates of deposit in this case was a "commercial activity."

A "commercial activity" has the jurisdictional nexus with the United States necessary to invoke the 28 U.S.C. § 1605(a)(2) exception when either (1) the foreign state carries on the commercial activity in the United States; (2) the foreign state, in connection with the foreign state's commercial activity elsewhere, performs an act in the United States; or (3) the foreign state, in connection with the foreign state's commercial activity elsewhere, performs an act outside the territory of the United States which causes a direct effect in the United States. In *Callejo v. Bancomer, S.A., supra,* the Fifth Circuit concluded that Bancomer's commercial activities had "direct effects in the United States" under the

---

**2.** Title 28 U.S.C. § 1330(a) provides:

The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

**3.** Title 28 U.S.C. § 1604 provides:

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

third jurisdictional connection. *Id.* at 1110. Similarly, this action arises from Bancam's commercial activities which may have had a direct effect in the United States. Alternatively, Bancam's commercial activities may have been "carried on in the United States." Since the District Court did not make factual findings on these issues, we do not decide whether or not Bancam's commercial activities had the required jurisdictional nexus with the United States. We hold, however, that by virtue of the 28 U.S.C. § 1605(a)(2) exception, the District Court may have had jurisdiction under 28 U.S.C. § 1330(a) to consider Riedel's breach of contract and Ohio securities law claims.

## II.

▪ Bancam argues that the "act of state doctrine" precluded the District Court from addressing Riedel's claims. The "act of state doctrine" precludes courts in this country from questioning the validity and effect of a sovereign act of a foreign nation performed in its own territory. In *Underhill v. Hernandez,* 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897), the Supreme Court stated:

> Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.

Under the "act of state doctrine," courts exercise jurisdiction but prudentially "decline to decide the merits of the case if in doing so we would need to judge the validity of the public acts of a sovereign state performed within its own territory." 764 F.2d at 1113. *See also, e.g., Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 421–24, 84 S.Ct. 923, 936–38, 11 L.Ed.2d 804 (1964).

In *Callejo v. Bancomer, S.A., supra,* the Fifth Circuit concluded that the "act of state doctrine" precluded the court from

inquiring into the validity of Mexico's currency exchange control regulations. The Callejos argued that the "act of state doctrine" did not apply for three reasons: (1) the Government of Mexico's promulgation of the currency exchange control regulations fell within the "commercial activity exception" to the doctrine; (2) since the regulations violated the Fund Agreement, the "treaty exception" to the doctrine applied; and (3) the currency exchange control regulations did not apply because the situs of the certificates of deposits was in Texas rather than in Mexico. In a very thorough and lengthy opinion, the Fifth Circuit rejected all three arguments. In a footnote, however, the Fifth Circuit stated:

> In their revised complaint, the Callejos alleged violations of § 12(1) of the Securities Act of 1933, 15 U.S.C. § 77*l*(1) (1982), and § 33A.(1) of the Texas Securities Act, Tex.Rev.Civ.Stat.Ann. art. 581–33A.(1), as well as breach of contract. We agree with the Callejos that these securities claims are not barred by the act of state doctrine, since they are based on Bancomer's initial failure to register the certificates of deposit, not on Bancomer's later breach of the certificates by complying with Mexico's exchange control regulations.... We dismiss these claims, however, on the ground that the certificates of deposit sold by Bancomer were not "securities" within the meaning of the federal and Texas securities laws.

*Id.* at 1125 n. 33.

▪ We adopt the reasoning of the Fifth Circuit in *Callejo v. Bancomer, S.A., supra,* regarding the "act of state doctrine." Consequently, we hold that the "act of state doctrine" precludes the District Court from addressing Riedel's breach of contract claim. Accordingly, we affirm the portion of the District Court's order denying Riedel's motion for a new trial on the breach of contract claim. The "act of state doctrine," however, does not bar the Ohio securities law claim. Riedel bases that claim on Bancam's failure to register the certificate of deposit with the Ohio

Division of Securities and not on Bancam's failure to repay dollars at the certificate's maturity.

## III.

As previously stated, Riedel does not challenge the District Court's conclusion that the certificates of deposit are not "securities" under federal securities law. In *Marine Bank v. Weaver*, 455 U.S. 551, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982), the Supreme Court held that a certificate of deposit issued by a bank in the United States was not a security for the purposes of the Securities Exchange Act.[4] In *Wolf v. Banco Nacional de Mexico, S.A.*, 739 F.2d 1458 (9th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985), the Ninth Circuit held that a certificate of deposit that a Mexican bank issued to a United States resident through interstate commerce was not a "security" under the federal securities laws. Nevertheless, Riedel argues that the certificates of deposit that Bancam issued are "securities" under ORC § 1707.01(B).[5] Bancam argues that Riedel

4. Section 3(a) of the Securities and Exchange Act of 1934, as amended and codified at 15 U.S.C. § 78c(a), provides in pertinent part:

> When used in this chapter, unless the context otherwise requires—
> . . . .
> (10) The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

In contrast, section 2(1) of the Securities Act of 1933, as amended and codified at 15 U.S.C. § 77b(1), provides:

> When used in this subchapter, unless the context otherwise requires—
> (1) The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

The Supreme Court, however, has "consistently held that the definition of 'security' in the 1934 Act is essentially the same as the definition of 'security' in § 2(1) of the Securities Act of 1933, 15 U.S.C. § 77(b)(1)." 455 U.S. at 555 n. 3 (citation omitted).

5. ORC § 1707.01(B) defines "security" as:

> any certificate or instrument which represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person or of any public or governmental body, subdivision, or agency. It includes shares of stock, certificates for shares of stock, voting-trust certificates, warrants and options to purchase securities, subscription rights, interim receipts, interim certificates, promissory notes, all forms of commercial paper, evidences of indebtedness, bonds, debentures, land trust certificates, fee certificates, leasehold certificates, syndicate certificates, endowment certificates, certificates or written instruments in or under profit-sharing or participation agreements or in or under oil, gas, or mining leases, or certificates or written instruments of any interest in or under the same, receipts evidencing preorganization or reorganization subscriptions, preorganization certificates, reorganization certificates, certificates evidencing an interest in any trust or pretended trust, any investment contract, any instrument evidencing a promise or an agreement to pay money, warehouse receipts for intoxicating liquor, and the currency of any government other than those of the United States and Canada,

did not state a claim under the Ohio securities laws because certificates of deposit are not "securities" under Ohio law.

■ Under the broadly drafted ORC § 1707.01(B), a certificate of deposit falls within the definition of "security." ORC § 1707.01(B) covers "evidences of indebtedness" and "any instrument evidencing a promise or an agreement to pay money...." Furthermore, in Ohio Att'y Gen. Opinion No. 33–652, the Attorney General of the State of Ohio, while interpreting Ohio General Code § 8624–2(2), a predecessor of ORC § 1707.01(B), concluded that "[c]laims against closed Ohio banks evidenced by passbooks or other instruments are securities within the meaning of the term as used in the Ohio Securities Act." Earlier in that opinion, the Ohio Attorney General stated that "there can be little doubt but that obligations of a bank evidenced by passbooks or other instruments are securities within the meaning of the Ohio Securities Act." Although the fact pattern in the opinion of the Ohio Attorney General essentially involved claims in bankruptcy against a closed bank and this Court is not bound by opinions of the Ohio Attorney General, ORC § 1707.01(B)'s broad language indicates that certificates of deposit are "securities" under Ohio securities law.

ORC § 1707.43 provides that a purchaser may void a sale made in violation of ORC Chapter 1707. ORC § 1707.07 requires registration by description, qualification, or coordination before a person may sell "securities" in Ohio. ORC § 1707.02(C), however, creates the following exemption from the registration provisions of ORC §§ 1707.08–1707.11:

Any security issued by and representing an interest in or an obligation of a state or nationally chartered bank or credit union, or a governmental corporation or agency created by or under the laws of the United States or of Canada is exempt, if it is under the supervision of or subject to regulation by the govern-

ment or state under whose laws it was organized.

Although the certificate of deposit involved in this case would qualify as exempt under a facial reading of this section because the certificate was "issued by ... a state or nationally chartered bank," ORC § 1707.-01(O) defines a "bank" as:

any bank, trust company, building and loan association, or savings association incorporated or organized under the laws of the United States or of any state thereof, or of Canada or of any province thereof, and subject to regulation or supervision by such country, state, or province.

Since Bancam was not "incorporated or organized under the laws of the United States or of any state thereof, or of Canada or of any province thereof," Bancam is not a "nationally chartered bank" under ORC § 1707.02(C). Consequently, Bancam does not qualify for the ORC § 1707.02(C) exemption. We reject Bancam's contention that the certificates of deposit are not "securities" under ORC § 1707.01(B). Accordingly, we reverse the portion of the District Court's order denying Riedel's motion for a new trial on the Ohio securities law claim.

## IV.

Since the District Court may have had subject matter jurisdiction, we remand the Ohio securities law claim for further proceedings consistent with this opinion. We also note that even if the District Court concludes that it has subject matter jurisdiction, Bancam has also argued that the District Court does not have personal jurisdiction. Assuming that the District Court decides that it has subject matter jurisdiction under the FSIA, the District Court will also have to make findings of fact to determine whether Bancam has sufficient "contacts" with the United States to satisfy due process. Furthermore, Bancam alleges that Ohio securities law does not apply because the circumstances giving rise to

but such sections shall not apply to bond investment companies or to the sale of real estate. "Security" shall, for the purposes of

such sections, be deemed to include real estate not situated in this state and any interest in real estate not situated in this state.

this action occurred in Mexico. Bancam claims that "[a]ny contact with Ohio was merely incidental as a result of Riedel's residence in Ohio." Brief of Defendant-Appellee at 22 n. 17. Accordingly, the District Court may have to decide whether Ohio securities law applies in the circumstances of this case. Finally, assuming that Ohio securities law required Bancam to register the certificates of deposit with the Ohio Division of Securities, the District Court must determine whether such a requirement impermissibly burdens foreign commerce because Congress has not required the registration of certificates of deposit sold by Mexican banks since certificates of deposit are not "securities" under the federal securities laws. Consequently, we remand the Ohio securities law claim to the District Court.

Accordingly, we affirm the portion of the District Court's order denying Riedel's motion for a new trial on the breach of contract claim, reverse the portion of the District Court's order denying Riedel's motion for a new trial on the Ohio securities law claim, and remand the Ohio securities law claim for further proceedings consistent with this opinion.