GOULD, INC., Plaintiff–Appellee, (86–3649), Plaintiff–Respondent, (86–8327),

v.

PECHINEY UGINE KUHLMANN and Trefimetaux, Defendants–Appellants, (86–3649), Defendants–Petitioners, (86–8327).

Nos. 86–3649, 86–8327.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 13, 1987.

Decided Aug. 2, 1988.
Rehearing Denied Sept. 27, 1988.

Patricia A. Hemann, Hahn, Loeser, & Parks, Richard Zellner, Cleveland, Ohio, Brice M. Clagett (argued), Herbert Dym, James R. Atwood, Steven J. Rosenbaum, Carlos M. Vazquez, Covington & Burling, Washington, D.C., for defendants-petitioners in No. 86–8327.

Brice M. Clagett (argued), Herbert Dym, James R. Atwood, Steven J. Rosenbaum, Carlos M. Vazquez, Covington & Burling, Washington, D.C., Harry C. Nester, Mark E. Staib, Patricia A. Hemann, Hahn, Loeser & Parks, Cleveland, Ohio, for defendants-appellants in No. 86–3649.

Edward E. Sachs, Gould, Inc., Rolling Meadows, Ill., Phillip H. Mayer (argued), Lawrence S. Wick, Leydig, Voit & Mayer, Chicago, Ill., Maynard F. Thomson, Robert P. Ducatman, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for Gould, Inc.

Before MERRITT and NORRIS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

ALAN E. NORRIS, Circuit Judge.

Defendants-appellants, Pechiney Ugine Kuhlmann ("Pechiney") and Trefimetaux, appeal the denial of their motion to dismiss the complaint of plaintiff-appellee, Gould, Inc. The motion was predicated upon lack of subject matter and personal jurisdiction under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1332(a)(2), (4), 1391(f), 1441(d), 1602–1611 ("FSIA"), improper venue, *forum non conveniens*, and failure to state a claim upon which relief can be granted.

Gould, a Delaware corporation, claimed that defendants had engaged in unfair competition; interfered with Gould's contractual relationship with its former employee, Dale C. Danver; unlawfully appropriated Gould's proprietary information and trade secrets; became unjustly enriched due to the misappropriation; and violated the Racketeer Influence and Corrupt Organizations Act. Defendants, French corporations with a majority of shares owned directly or indirectly by the Republic of France at the time these events took place, moved to dismiss Gould's complaint before

filing an answer. The district court denied the motion, stating that Gould had established subject matter and personal jurisdiction, that venue was proper, and that the district court was not a *forum non conveniens*, and reserved ruling on the Fed.R. Civ.P. 12(b)(6) aspect of the motion.

For the reasons stated below, we reverse and remand to the district court that portion of its order which denied defendants' motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction, and for improper venue, and affirm the district court's denial of defendants' motion to dismiss on the basis of *forum non conveniens*.

## I.

Gould manufactures electrolytic copper foil, which is used in producing printed computer circuit boards, at its foil division in Eastlake, Ohio. Dale C. Danver was an engineer in Gould's foil division from June 1981 until August 1983, when he left to form Danver Technologies Group, Inc. Danver then entered into negotiations regarding copper foil manufacturing with Trefimetaux, a wholly owned subsidiary of Pechiney at the time these events took place, and with Pechiney itself or its agents. Although Trefimetaux manufactured copper and copper alloy products, neither Pechiney nor Trefimetaux had ever produced copper foil. Sometime in late 1984, Trefimetaux informed Danver that it was not interested in entering into a joint venture with Danver because it believed that his technique for manufacturing copper foil might actually belong to Gould.

According to Gould's complaint, prior to Danver's negotiations with defendants, he entered into agreements with two Japanese corporations, Mitsui Mining and Smelting Co., Ltd., and its subsidiary, Miyakoshi Machine Tools Co., Ltd., to sell information describing a manufacturing process for copper foil. In 1985, after terminating its relationship with Danver, Pechiney, presumably through its subsidiary Trefimetaux, entered into a joint venture with Mitsui for the construction of a copper foil plant in northern France, which allegedly would use the information from Danver.

In support of their motion to dismiss Gould's complaint, Pechiney and Trefimetaux filed an affidavit of Marcel H. Paul, assistant to the president of Trefimetaux. In it, Paul said that Danver initiated contact with Trefimetaux regarding a proposed joint venture to establish a copper foil factory in France; that most of the discussions between Danver and representatives of Trefimetaux took place in France; that Trefimetaux indicated to Danver from the outset that Trefimetaux did not want to deal with Danver if his information infringed on the rights of any third party; that Danver repeatedly told Trefimetaux that the information he wanted to sell did not belong to any third parties, and denied that his employment contract with Gould prohibited his activities; that Trefimetaux received information from Gould that Danver's employment contract prohibited his use of any information relating to Gould's technique for processing copper foil; that representatives from Trefimetaux, Gould and Danver Technologies met in late 1984 to discuss Gould's employment contract with Danver; and that Trefimetaux terminated its relations with Danver during 1985.

Gould did not file a response to defendants' motion to dismiss. Instead, it sought discovery on several issues, including jurisdictional issues. Defendants objected to some of Gould's discovery demands. Gould filed a motion to compel discovery, and defendants moved for a protective order staying discovery until the court resolved defendants' claims of *forum non conveniens* and failure to state a claim upon which relief could be granted, which would not require further factual development. Gould filed a response to defendants' motion for a protective order, and submitted an affidavit from Lawrence S. Wick, one of Gould's attorneys. This lengthy affidavit detailed the dates, locations, and purposes of the numerous discussions between Trefimetaux and Danver, several of which took place in Ohio, and indicated that defendants had several other commercial contacts in the United States.

Defendants filed a reply to Gould's response and moved for leave to file a reply brief instanter. In their reply, defendants objected to several statements contained in the Wick affidavit, and to its admissibility. On the same day, the district court issued its opinion and order denying defendants' motion to dismiss. The district court apparently based its opinion upon both the Paul and Wick affidavits. The court certified its order for an interlocutory appeal under 28 U.S.C. § 1292(b). Defendants appealed the denial of their motion to dismiss under both 28 U.S.C. § 1291, as an appeal from a final order, and § 1292(b).

The parties agree that, during the pendency of this appeal, Pechiney sold a majority of the shares of Trefimetaux to a newly formed, privately owned Italian company, Europa Metalli–LMI. The Republic of France continues to own 100 percent of Pechiney, and Pechiney now owns 20 percent of Europa Metalli–LMI. Societa Metallurgia Italiana S.p.A., an Italian corporation, owns 40 percent of Europa Metalli–LMI, and the remaining 40 percent of Europa is owned through a public offering. Pechiney has indicated that Trefimetaux's interest in the joint venture with Mitsui was acquired in its entirety by Pechiney.

**1. 28 U.S.C. § 1603. Definitions**

For purposes of this chapter—
(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).
(b) An "agency or instrumentality of a foreign state" means any entity—
(1) which is a separate legal person, corporate or otherwise, and
(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

**2. 28 U.S.C. § 1605. General exceptions to the jurisdictional immunity of a foreign state**

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

## II.

Jurisdictional immunity of a foreign state is restricted to suits involving its public acts, and does not extend to commercial or private acts. *McKeel v. Islamic Republic of Iran,* 722 F.2d 582 (9th Cir. 1983), *cert. denied,* 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984); *see* 28 U.S.C. § 1602. "The purpose of the FSIA is to facilitate suits in the United States courts arising from the commercial conduct of foreign sovereigns." *Transamerican S.S. v. Somali Democratic Republic,* 767 F.2d 998, 1001 (D.C.Cir.1985). Under the statutory scheme of the FSIA, a foreign state is immune from suit unless the case involves certain commercial activity or other exceptions set out in the FSIA itself or by international agreements. 28 U.S.C. § 1604. At issue below was whether defendants were foreign states as that status is defined in 28 U.S.C. § 1603,[1] and if so, whether they engaged in conduct which would operate as an exception to immunity under 28 U.S.C. § 1605(a)(2).[2] On appeal, Gould also contends that, as the result of the sale of Trefimetaux's shares, defendant can no longer qualify as a foreign state and so clearly would not be immune as regards its conduct after the change of ownership interests.

. . . .
(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

**28 U.S.C. § 1603. Definitions**

. . . .
(d) A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.
(e) A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States.

The subject matter jurisdiction granted to the district courts by the FSIA in 28 U.S.C. § 1330(a)[3] is neither diversity nor alienage jurisdiction, but federal question jurisdiction. It is a statutory grant of jurisdiction enacted by Congress pursuant to the "arising under" clause of Article III, Section 2, of the Constitution. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). When subject matter jurisdiction is predicated upon the diversity of the parties, citizenship of the parties is determined at the time the action is commenced. *E.g., Anderson v. Watts*, 138 U.S. 694, 702–03, 11 S.Ct. 449, 451, 34 L.Ed. 1078 (1891). It would appear that the determination of whether a party is subject to the court's jurisdiction under 28 U.S.C. § 1330 should be based upon a party's status at the time the act complained of occurred. *See Morgan Guar. Trust Co. of N.Y. v. Republic of Palau*, 639 F.Supp. 706, 712 (S.D.N.Y. 1986) (rejecting date of complaint as time to determine status of defendant for purpose of defining "foreign state"). *Cf. The Western Maid*, 257 U.S. 419, 42 S.Ct. 159, 66 L.Ed. 299 (1922) (liability did not attach for acts occurring while ship was owned by federal government after ownership transferred to private hands).

When one views the information available to the district court, it is apparent that, at the time defendants met and negotiated with Danver, and when they subsequently entered into the joint venture with Mitsui, both Pechiney and Trefimetaux were foreign states as defined by the FSIA in 28 U.S.C. § 1603. As mentioned above, Trefimetaux has undergone a change in ownership since this appeal was filed, and a majority of its shares are no longer owned, directly or indirectly, by the Republic of France. As to completed acts upon which the complaint is based, the parties are bound by the jurisdictional facts existing at the time of those acts.

3. **28 U.S.C. § 1330. Actions against foreign states**

(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of

However, the complaint also alleges continuing acts of defendants which cause injury to Gould. Specifically, Gould alleges that the joint venture between Mitsui and defendants is using proprietary information and trade secrets of Gould which were obtained through Danver. Defendants have represented to this court that all interest in the joint venture belonging to Trefimetaux was transferred to Pechiney at the same time that the majority of shares in Trefimetaux was transferred to Europa Metalli–LMI. On remand, the district court will need to make the factual determination of whether there has occurred a significant change in ownership, and, if so, what the legal effect of the change is, including the legal effect of any activities which are alleged to constitute a continuing wrong against Gould.

Once it determined that defendants were foreign states, the district court was faced with the question of whether one of the commercial activity exceptions to foreign sovereign immunity found in 28 U.S.C. § 1605(a)(2) applied to either defendant. An exception to foreign sovereign immunity must exist to find subject matter jurisdiction.

A motion under Fed.R.Civ.P. 12(b)(1) questioning subject matter jurisdiction must be considered before other challenges since the court must find jurisdiction before determining the validity of a claim. *See Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Ordinarily, the "denial of a motion to dismiss, even when the motion is based on jurisdictional grounds, is not immediately reviewable." *Catlin v. United States*, 324 U.S. 229, 236, 65 S.Ct. 631, 635, 89 L.Ed. 911 (1945). However, a denial of foreign sovereign immunity is immediately appealable under the collateral order doctrine as a final decision, pursuant to 28 U.S.C. § 1291. *See Mitchell v. Forsyth*, 472 U.S.

this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

511, 524–27, 105 S.Ct. 2806, 2814–16, 86 L.Ed.2d 411 (1985); *Segni v. Commercial Office of Spain,* 816 F.2d 344, 347 (7th Cir.1987).

When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction in the complaint which may be cured by an amendment to the pleading, the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction. *Rogers v. Stratton Indus.,* 798 F.2d 913, 915 (6th Cir.1986); *Mortensen v. First Federal Sav. & Loan Ass'n,* 549 F.2d 884 (3d Cir.1977). In the absence of statutory direction, the district court has considerable discretion in devising the procedure to inquire into the existence of jurisdiction. *Land v. Dollar,* 330 U.S. 731, 735 and n. 4, 67 S.Ct. 1009, 1011 and n. 4, 91 L.Ed. 1209 (1947); *Rogers,* 798 F.2d at 918. Thus, the district court may consider affidavits, allow discovery, hear oral testimony, order an evidentiary hearing, or even postpone its determination if the question of jurisdiction is intertwined with the merits. *See id.; Prakash v. American Univ.,* 727 F.2d 1174, 1179–80 (D.C. Cir.1984).[4] However, we stress that a party must be given " 'an ample opportunity to secure and present evidence relevant to the existence of jurisdiction.' " *Rogers* at 918 (quoting *Gordon v. National Youth Work Alliance,* 675 F.2d 356, 363 (D.C.Cir.1982) (Robinson, C.J., concurring)).

Because sovereign immunity is immunity from suit, not just from liability, *see Segni,* 816 F.2d at 347, postponing the determination of subject matter jurisdiction until some point during or after trial would be inappropriate. And, since entitlement of a party to immunity from suit is such a critical preliminary determination, the parties have the responsibility, and must be afforded a fair opportunity, to define issues of fact and law, and to submit evidence necessary to the resolution of the issues. Yet, extensive discovery and other extended proceedings at this stage may frustrate the significance and benefit of entitlement to immunity from suit. Accordingly, discovery and fact-finding should be limited to the essentials necessary to determining the preliminary question of jurisdiction. In this context, the importance of the court having precisely defined the procedures which will permit it and the parties to adequately address the issues is manifest, especially since the district court's determination concerning jurisdiction is immediately subject to appeal.

Ordinarily, the burden of proof in establishing subject matter jurisdiction is on the party asserting jurisdiction. *See, e.g., Rogers,* 798 F.2d at 915. However, the legislative history of the FSIA envisions a shifting burden of proof.[5] Here, defendants raised the issue of sovereign immunity in their motion to dismiss, arguing that their conduct did not fall within the commercial activity exceptions, and filing an affidavit supporting that argument. The burden then shifted to Gould to go forward by producing evidence that Pechiney and Trefimetaux were not entitled to immunity on the basis of one or more of the enumerated exceptions. Gould filed the Wick affidavit and extensive attachments, and the district court was persuaded that these materials, in conjunction with Gould's complaint, demonstrated that

---

**4.** *See also* Fed.R.Civ.P. 43(e): "When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition."

**5.** H.R.Rep. No. 1487, 94 Cong., 2d Sess. 1, 17, *reprinted in* 1976 U.S.Code Cong. & Admin. News 6604, 6616:

> [T]he burden will remain on the foreign state to produce evidence in support of its claim of immunity. Thus, evidence must be produced to establish that a foreign state or one of its subdivisions, agencies or instrumentalities is the defendant in the suit and that the plaintiff's claim relates to a public act of the foreign state—that is, an act not within the exceptions in sections 1605–1607. Once the foreign state has produced such *prima facie* evidence of immunity, the burden of going forward would shift to the plaintiff to produce evidence establishing that the foreign state is not entitled to immunity. The ultimate burden of proving immunity would rest with the foreign state.

defendants had carried on commercial activity in the United States and that they had engaged in commercial activity outside the United States that caused a direct effect in this country. Accordingly, the district court concluded that defendants had not carried their ultimate burden of proof in establishing the inapplicability of the commercial activity exceptions. *See Transamerican S.S.*, 767 F.2d at 1002; *Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne de Navigation (C.N.A.N.)*, 730 F.2d 195, 199 (5th Cir.1984).

▪ Although defendants were charged with the ultimate burden of producing evidence in support of their claim of immunity, we are troubled by the kind and quality of plaintiff's evidence which the district court relied upon to overcome defendants' *prima facie* showing that plaintiff's lawsuit was not based on conduct within the commercial activity exceptions. Part of the predicament was occasioned, of course, by defendants' resistance to discovery. Accordingly, although the methodology utilized by the district judge to analyze the issues was sound, nevertheless, those issues were not ripe for resolution and the cause must be remanded for the production of evidence which is more probative and reliable than that provided to the court.[6]

### III.

We now turn our attention to issues which will be pertinent on remand.

The district court will have subject matter jurisdiction if Gould's claim is based upon commercial activity of defendants and if the activity has the required jurisdictional nexus with the United States as set forth in the § 1605(a)(2) exceptions. *See Reidel v. Bancam, S.A.*, 792 F.2d 587, 591 (6th Cir.1986); *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1107 (5th Cir.1985).

"Commercial activity" is defined in 28 U.S.C. § 1603(d) as "either a regular course of commercial conduct or a particular commercial transaction or act." Consistent with the restrictive view of sovereign immunity codified in the FSIA, an activity is commercial if it "is of a type that a private person would customarily engage in for profit," *Callejo*, 764 F.2d 1108 n. 6, without regard to its ultimate purpose. Negotiations for a contract to purchase goods or services have been held to be commercial activity. *See, e.g., Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300 (2d Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982); *Obenchain Corp. v. Corporation Nacionale de Inversiones*, 656 F.Supp. 435 (W.D.Pa.1987). The district court correctly concluded that the activity upon which this action is based was commercial rather than governmental.

▪ It must be borne in mind that the commercial activity relied upon by plaintiff for jurisdictional purposes must be also the activity upon which the lawsuit is based; that is, there must be a connection between that activity and the act complained of in the lawsuit. *Reidel*, 792 F.2d at 591. Accordingly, a finding that defendants have been "doing business" which might be sufficient to satisfy the personal jurisdiction requirements of many "long-arm statutes," may not meet the jurisdictional nexus requirements of 28 U.S.C. § 1605(a)(2).

To satisfy the exception contained in the first clause of § 1605(a)(2) for an action "based upon a commercial activity carried on in the United States by the foreign state," the commercial activity of the foreign state must have "substantial contact with the United States." 28 U.S.C. § 1603(e). In addressing the issue of whether a sufficient amount of that activity was carried on in the United States, the

---

**6.** Defendants refused to comply with discovery because Gould's discovery requests did not conform to the requirements of the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, and compliance might subject them to certain French penal statutes. On remand, the district court's formulation of discovery procedures need not require conformity to the Hague Convention evidence procedures. Instead, the district court should scrutinize "the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective." *Societe Nationale Industrielle Aerospatiale v. United States District Court*, 482 U.S. —, 107 S.Ct. 2542, 2555–56, 96 L.Ed.2d 461 (1987).

district court said that it "appears" that defendants were "extensively represented" in the United States by their "agent," Pechiney Corporation, a Delaware corporation, in negotiating and planning a possible joint venture with Danver, who had wrongfully come into possession of Gould's trade secrets. In addition, the court determined that it was not decisive that this joint venture was not consummated, since defendants' activity here was part of a continuing course of conduct which resulted in its obtaining the use of those trade secrets indirectly through a joint venture with Mitsui, a Japanese company that acquired them from Danver. Were the evidence of a quality to adequately support these findings, then the court's conclusion that the conduct complained of as the basis for the lawsuit constituted "commercial activity carried on in the United States" would be warranted.

■ In determining whether the exception contained in the third clause of 28 U.S.C. § 1605(a)(2) applies to defendants, that is, whether "an act outside the territory of the United States . . . causes a direct effect in the United States," a court must consider whether the effect was "sufficiently 'direct'" and "sufficiently 'in'" the United States that Congress would want a United States court to hear the case. *Texas Trading*, 647 F.2d at 313. Within the contemplation of the statute, an effect is "direct" in the sense that it is the direct and foreseeable result of the conduct outside the United States. Accordingly, economic injury to a United States corporation, as a result of a foreign state's commercial activity, may satisfy the "direct effects" clause of 28 U.S.C. § 1605(a)(2) if the corporation is the primary direct, rather than indirect, victim of the conduct, and if injurious and significant financial consequences to that corporation were the foreseeable, rather than fortuitous, result of the conduct. *See Callejo*, 764 F.2d at 1111–12; *Zernicek v. Brown & Root, Inc.*, 826 F.2d 415, 419 (5th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988); *Australian Gov't Aircraft Factories v. Lynne*, 743 F.2d 672, 675 (9th Cir.1984); *Harris Corp. v. National Iranian Radio*, 691 F.2d 1344, 1351 (11th Cir.1982); *Carey v. National Oil Corp.*, 592 F.2d 673 (2d Cir.1979).

■ Defendants contend that corporate domicile in the United States cannot serve as a sufficient basis for a finding that commercial activity outside the United States has a direct effect in the United States, when the contention is that the United States corporation will suffer financial loss due to competition from defendants in foreign markets. Defendants' argument misses the mark. The conduct complained about includes wrongfully obtaining and utilizing plaintiff's trade secrets. It is not limited to competition in foreign markets. It is difficult to imagine conduct which will have a more direct effect upon plaintiff, which is located and operates in the United States. Surely, this is the kind of claim which Congress intended district courts to adjudicate when brought by American nationals against foreign sovereigns; it is unlikely that Congress intended to create havens abroad for thieves of this country's industrial secrets.

The misappropriation, noted the district court, was alleged to be the result, not of Trefimetaux's direct utilization of trade secret information offered it by Danver, but instead, of its indirect utilization of that information through its joint venture with Mitsui, a Japanese corporation. Mitsui was to provide the technology, which Trefimetaux knew was based upon trade secret information obtained by its partner from Danver. Although we have no quarrel with the district court's conclusion that such a factual predicate would satisfy the "direct effect in the United States" exception insofar as Trefimetaux is concerned, the state of the evidentiary materials before the district court was such that, as it acknowledged in its opinion, "it is by no means clear that" this was the case. In addition, the district court did not clearly set out the factual predicate for its conclusion that Pechiney, as well as Trefimetaux, was involved in this conduct outside the United States.

The district court also denied defendants' motion to dismiss for lack of personal juris-

diction under Fed.R.Civ.P. 12(b)(2), finding that the materials submitted by Gould were sufficient to support a minimum contacts test. The FSIA provides for personal jurisdiction over foreign states in 28 U.S.C. § 1330(b)[7] which, according to the legislative history, is modeled after the long-arm statute of the District of Columbia. By incorporating into 28 U.S.C. § 1330(b) the jurisdictional contact requirements of 28 U.S.C. § 1330(a), and the service of process requirements of 28 U.S.C. § 1608, Congress sought to require jurisdictional contacts and notice which would satisfy due process requirements. H.R.Rep. No. 1487, 94th Cong., 2d Sess. at 13–14, *reprinted in* 1976 U.S.Code Cong. & Admin.News at 6612. Upon remand, then, personal jurisdiction will depend upon the district court finding subject matter jurisdiction under 28 U.S.C. § 1330(a), and proper service under 28 U.S.C. § 1608.

## IV.

Defendants also appeal the district court's denial of their motion to dismiss for improper venue and *forum non conveniens.*

Venue is proper under 28 U.S.C. § 1391(f)[8] in the judicial district where the claim arose. If the district court on remand finds that the defendants engaged in commercial activity such that subject matter jurisdiction and personal jurisdiction is present, and that a substantial part of the events giving rise to the claim took place in the Northern District of Ohio, then venue would be proper.

*Forum non conveniens* is not the same as jurisdiction and is a consideration independent of the FSIA. *See Verlinden,* 461 U.S. at 490 n. 15, 103 S.Ct. at 1970 n. 15. In addition, different principles regarding *forum non conveniens* apply when a case involves a United States citizen suing a foreign state, than when a foreign citizen attempts to avail himself of a United States forum. See *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 697, 70 S.Ct. 861, 869, 94 L.Ed. 1206 (1950). A plaintiff who is a United States citizen should not be deprived of his choice of forum except when the trial would prove oppressive and vexatious to defendant, out of all proportion to the convenience to plaintiff, or when it would be inappropriate because of administrative or legal problems of the court. *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947).

We conclude that if subject matter and personal jurisdiction is present, this case presents no exceptional circumstances which would require the trial court to dismiss for *forum non conveniens.* "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). *See also Lehman v. Humphrey Cayman, Ltd.,* 713 F.2d 339, 342 (8th Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984); *Cf. Dowling v. Richardson–Merrell, Inc.,* 727. F.2d 608 (6th Cir.1984). We

---

7. **28 U.S.C. § 1330. Actions against foreign states**

    . . . .

    (b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

8. **28 U.S.C. § 1391. Venue generally**

    . . . .

    (f) A civil action against a foreign state as defined in section 1603(a) of this title may be brought—

    (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

    (2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;

    (3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or

    (4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

express no opinion on the choice of law which should be applied at the trial, if jurisdiction is found.

Accordingly, we reverse that portion of the district court's order which denied defendants' motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction, and for improper venue, and remand this cause to the district court in order that the issues raised by those portions of defendants' motion may be more fully and adequately developed pursuant to procedures to be designed by the district court, and determined in a manner consistent with this opinion. We affirm the district court's denial of defendants' motion to dismiss on the basis of *forum non conveniens*. Defendants' petition for leave to appeal pursuant to 28 U.S.C. § 1292(b) and plaintiff's motion to dismiss the appeal are denied, in view of our conclusion that defendants are entitled to appeal as of right under the collateral order doctrine pursuant to 28 U.S.C. § 1291.