**FARGO WEITE REISEN GmbH, a corporation organized under the laws of the Federal Republic of Germany, Plaintiff,**

v.

**JAMAICA VACATIONS LIMITED, INC., a foreign corporation, Defendant.**

No. 90–1800–CIV.

United States District Court, S.D. Florida.

April 22, 1992.

Phillip M. Gerson, Miami, Fla., for plaintiff.

R. Thomas Farrar, Holland & Knight, Miami, Fla., for defendant.

### ORDER DISMISSING COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

ARONOVITZ, District Judge.

This is a civil action brought by Plaintiff Fargo Weite Reisen GMBH ("Fargo"), a private German corporation, against Defendant Jamaica Vacations Limited, Inc. ("JAMVAC"), a wholly owned subsidiary of the Government of Jamaica, to recover sums allegedly due and owing on a contract for services.

A non-jury trial was commenced by this Court on April 13, 1992. Immediately prior to the start of trial, however, this Court heard oral argument on Defendant JAMVAC's motion for summary judgment for lack of subject matter jurisdiction, file dated March 27, 1992.[1]

Because the challenge to the subject matter jurisdiction of the Court was brought so close to the start of trial, this Court reserved its ruling on the motion, and allowed Plaintiff Fargo to present its case. During Fargo's presentation of its case, testimony was adduced and exhibits were introduced relevant to the determination of whether this Court has subject matter jurisdiction over this action. At the close of Fargo's case, JAMVAC renewed its challenge to the subject matter jurisdiction of

1. This motion should more appropriately be characterized as a motion to dismiss the complaint for lack of subject matter jurisdiction, and we treat it as such.

**274**

this Court. For the reasons which follow, we find that subject matter jurisdiction is lacking and dismiss the Complaint.[2]

## MEMORANDUM OPINION

JAMVAC is a Jamaican corporation which is wholly owned by the Government of Jamaica, and whose headquarters are based in Jamaica. It engages in promoting charter tourism to Jamaica. At all times material, JAMVAC also had an office in Coral Gables, Florida, which was operated by Peter Trench, the general manager for JAMVAC in charge of North American operations. Although Trench was primarily responsible for promoting Jamaican tourism in the United States, he also helped manage JAMVAC's European operations while JAMVAC was in the process of establishing an office in Europe.

On December 14, 1989, JAMVAC entered into a contract with Fargo, a German corporation, under which Fargo was to provide specified services to promote tourism to Jamaica. In particular, Fargo agreed to guaranty a certain number of seats on charter flights to Jamaica and to provide advertising services to travel agents in Germany. In exchange, JAMVAC agreed to pay Fargo $230,000 in accordance with a specified payment schedule.

The contract involved charter flights by LTU, a German carrier. The anticipated passengers would have been German, Swiss, and Austrian. The distributed advertising brochures were written in German. The beneficiaries of the contract were to be a German corporation (Fargo) and the Country of Jamaica.

The contract was negotiated and signed in Germany by representatives of the two corporations. The contract bore the Coral Gables address of JAMVAC. After the contract was signed, Fargo communicated on four separate occasions with JAMVAC at its Coral Gables office, via telefax, concerning performance of the contract and concerning the time schedule for payment. The contract payment schedule was stated in United States dollars, which were to be converted to German marks.

Fargo alleges that it performed its end of the bargain, but that it has not received any money for such performance. This lawsuit was filed to recover the money allegedly due and owing under the contract for services.

*Sovereign Immunity*

■ JAMVAC contends that, as an agency of a foreign state,[3] it is immune from the subject matter jurisdiction of this Court under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330, 1602–1611 (1988). The FSIA connects the issue of subject matter jurisdiction to the issue of sovereign immunity. *See Foremost-McKesson v. Islamic Republic of Iran*, 905 F.2d 438, 442 (D.C.Cir.1990). In a civil action against a foreign state, or the agency or instrumentality of a foreign state, a District court lacks subject matter jurisdiction unless one of the exceptions to immunity applies.

Fargo contends that subject matter jurisdiction exists under two distinct exceptions to immunity. First, Fargo maintains that JAMVAC waived the defense of sovereign immunity by not raising it in its first responsive pleading (motion to dismiss for forum non conveniens), even though it subsequently raised the defense in its first Answer. Second, Fargo argues that JAMVAC is not entitled to immunity because its acts come within the purview of the "commercial activity" exception set forth in § 1605(a)(2).

*Waiver*

■ Fargo is correct that sovereign immunity is waived if the "foreign state has filed a responsive pleading in an action

2. Upon careful review of the case, the Court notes that there was sufficient evidence presented in the pre-trial submissions of the parties for this Court to have concluded, before trial, that subject matter jurisdiction was lacking. The evidence adduced at trial simply served to bolster this Court's conclusions. To the extent that this Court relies on the evidence offered at trial to find that subject matter jurisdiction is lacking, the findings herein shall be considered findings of fact and conclusions of law.

3. The parties do not dispute that JAMVAC is an agency of the Jamaican Government.

without raising the defense of sovereign immunity." *See Canadian Overseas v. Compania de Acero,* 727 F.2d 274, 277 (2nd Cir.1984) (citing legislative history of FSIA). The consensus among the courts, however, is that motions are not technically "responsive pleadings" for purposes of raising the defense of sovereign immunity. *See Canadian Overseas,* 727 F.2d at 277 (holding that the filing of various motions, including motions to dismiss, does not waive the defense); *Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438 (D.C.Cir.1990) (holding that implied waiver provision of FSIA must be construed narrowly and allowing Iran to amend its answer to include sovereign immunity defense).

■ This Court agrees with the Court's reasoning in *Canadian Overseas.* Although JAMVAC did not raise the defense of sovereign immunity in it first responsive motion (motion to dismiss for forum non conveniens) filed before its Answer, JAMVAC did raise the defense in its first Answer filed on September 25, 1991. As such, JAMVAC did not waive its entitlement to immunity.

*Commercial Activity*

■ Second, Fargo argues that subject matter jurisdiction exists based upon the commercial activity exceptions set forth in § 1605(a)(2), which provides as follows:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case

(2) in which the action is based upon a commercial activity carried on in the United States by a foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

■ Fargo contends that this action is based upon a commercial activity carried on in the United States by a foreign state, and upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere. In particular, Fargo argues that because the contract bore JAMVAC's Coral Gables address, and because some post-contract correspondence with JAMVAC was directed to and from the Coral Gables office, JAMVAC has engaged in a commercial activity as defined under the FSIA. Fargo cites several cases, in support thereof, which hold that the mere negotiation of a contract in the United States can be sufficient to constitute "commercial activity." *See Gould v. Pechiney Ugine Kuhlman,* 853 F.2d 445, 452 (6th Cir.1988); *Texas Trading v. Federal Republic of Nigeria,* 647 F.2d 300 (2nd Cir.1981).

JAMVAC, on the other hand, argues that the "commercial activity" in question did not have a sufficient nexus to the United States to fall under any one of the three exceptions enumerated in § 1605(a)(2). JAMVAC reasons that the contract was negotiated and signed in Germany for the benefit of a German corporation and the Jamaican Government, and that the alleged nonperformance of the contract occurred in Germany, not the United States.

JAMVAC further notes that the only relationship between the contract and the United States was the mere fortuity that Peter Trench, the manager in charge of negotiating the contract for JAMVAC, maintained his office in the United States for JAMVAC's "internal convenience." The fact that the contract bore the Coral Gables address and that infrequent communications subsequent to the signing of the contract were made to and from the Coral Gables office, JAMVAC contends, is of no significance. Accordingly, JAMVAC argues, the contract could not have possibly been "based upon" a commercial activity carried on in the United States since no commercial activity was carried on in this country.

Significantly, the *Gould* and *Texas Trading* cases cited by Fargo involved contracts negotiated by United States corporations in the United States. The courts held that the foreign states could not avail themselves of sovereign immunity because they

entered into contracts in the United States marketplace and should have expected to compete on the same level playing field with other members of that marketplace (and be sued if they do not). That is, the intent of the "commercial activity" exception of the FSIA is to prevent foreign states from doing business in the United States or having an effect in the United States, and then using the shield of immunity when the business deal goes sour.

Fargo also relies on *Nelson v. Saudi Arabia*, 923 F.2d 1528 (11th Cir.1991), in which the court held that the recruitment and hiring of a U.S. citizen in the United States to serve as a monitoring systems engineer for a hospital in Saudi Arabia was a "commercial activity" under the FSIA. In *Nelson*, the fact that Nelson was an American citizen and that his intensive recruitment was conducted by a wholly-owned subsidiary of an American corporation were of great relevance in the court's refusal to shield the Country of Saudi Arabia with immunity from suit.

While this Court recognizes that, under the FSIA, foreign corporations may sue foreign states in a United States court, the suit must be "based upon" a commercial activity in the United States.[4] Stated another way, this Court should not sit as an international court of claims to hear actions between foreign corporations and foreign states, where the action has only a fortuitous and tangential nexus to the United States. This Court finds that the fact that JAMVAC maintained an office in the United States, that the contract bore a United States address for JAMVAC, and that four "post-contract execution" communications with Fargo emanated from the Coral Gables office, is an insufficient factual predicate for this Court to conclude that this action is "based upon" a commercial activity in the United States.

This Court's holding comports with the rationale for the "commercial activity" exception. It would seemingly run afoul of the intent of the FSIA to allow a foreign corporation to sue a foreign state in a United States court, under a contract having no effect in the United States, simply because some post-contract communications may have been directed to and from the United States.

*Conclusion*

THE COURT has considered the Motion for Summary Judgment, response, reply, the pertinent portions of the record, the argument of counsel, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that the said Motion be, and the same is hereby GRANTED. Fargo's Complaint is hereby DISMISSED, without prejudice, for lack of subject matter jurisdiction.[5]

DONE AND ORDERED.

---

4. Fargo concedes that the commercial activity had no "direct effect" in the United States so as to come within the third exception set forth in § 1605(a)(2).

5. The Court expresses no opinion as to the merits of Fargo's claim for breach of contract. The Court simply holds that it has no jurisdiction to reach the merits of the claim.