Christopher GERDING, Administrator of the Estate of Leslie Margaret Gerding, Deceased; Christopher Gerding, Individually; Charles Christian Gerding, Individually; Joan Fraser Gerding, Plaintiffs–Appellants,

v.

REPUBLIC OF FRANCE; Ministere Des Postes Et Des Telecommunications Et de La Telediffusion; France Cables & Radio; Direction Des Telecommunications Sous–Marines; Direction Telecommunications Reseau Exterieur; Companie Francaise Des Cables Sous–Marines; N/C LEON THEVENIN, in rem in the Atlantic Ocean; Claude Voiry, M.D.; Atlantic Cable Maintenance Association, Jointly and Severally; Compania Telefonica National de Espana, a corporation organized and existing under the laws of Spain, a/k/a CTNE, a/k/a Telefonica, and having its principal office at Madrid, Spain, Defendants–Appellees,

and

Transoceanic Cable Ship Co.; American Telephone and Telegraph Company, Bell Labs; Bell Telephone Laboratories, Incorporation, Defendants.

No. 90–2503.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1991.

Decided Sept. 5, 1991.

As Amended Nov. 21, 1991.

---

Ronald Roger Allen, Jr. (Joseph D. Pizzurro, Curtis, Mallet–Prevost, Colt & Mosle, New York City, David M. Feitel, Jeffrey G. Cook, Miles & Stockbridge, Baltimore, Md., on brief), Curtis, Mallet–Prevost, Colt & Mosle, New York City, for defendants-appellees.

Edmund J. O'Meally, Blum, Yumkas, Mailman, Gutman & Denick, P.A., Baltimore, Md.  Robert A. Kosseff, Trubman, Chaiken & Kosseff, David L. Lockard, Philadelphia, Pa., on brief, for plaintiffs-appellants.

Before PHILLIPS, Circuit Judge, CHAPMAN, Senior Circuit Judge, and KELLAM, Senior District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

PHILLIPS, Circuit Judge:

The personal representative and survivors of Leslie Gerding (collectively, the Gerdings) appeal the district court's dismissal of their action seeking damages for the death of Leslie Gerding against the Republic of France and other French officials and agencies (hereinafter "French defendants") * on the grounds of immunity under the Foreign Sovereign Immunities Act (FSIA). The Gerdings claim that the district court should have allowed discovery before ruling on the motion to dismiss, and that in any event the record does not support the court's conclusion that the French defendants are immune to suit. Because the Gerdings failed timely to seek discovery and because the district court did not err in finding immunity under the FSIA, we affirm.

I

In 1983, AT & T sold Optican 1, an undersea fiber optic deep water cable system to the Compania Telefonica Nacional de Espana (Telefonica). Under the sales contract, AT & T agreed to install the Optican 1 cable between Spain and the Canary Islands. In 1985, Telefonica made Optican 1 part of the Atlantic Cable Maintenance Agreement (ACMA). The London-based ACMA consists of governments and companies that own or repair cables in the Atlantic Ocean. Telefonica, AT & T, and France Cables et Radio (FCR) all participate in the ACMA. The ACMA takes care of cable maintenance requests by matching the requests with available "cable ships," including the *N/C Leon Thevenin*, vessels which specialize in repairing cables. Each "cable ship" is individually owned by an ACMA-participating country. The ACMA assigns the ships to geographical zones where they stay on standby until they are assigned to a repair mission. When a cable ship is assigned to a repair job, ACMA bills the cable owner requesting the repair.

As it turned out, Optican 1 failed because it could not withstand shark bites. AT & T then asked Bell Labs, its research and development organization, to manufacture a cable that would be protected from fish bites. Leslie Gerding, a Bell Lab employee, was assigned to this project. AT & T made an agreement with Telfonica pursuant to which AT & T would install the new cable and Telfonica would pay the bill for the cable ship assigned by the ACMA. The ACMA assigned the French vessel, the *N/C Leon Thevenin*, for this mission. The *N/C Leon Thevenin* is wholly owned by FCR and is used only for undersea cable maintenance and repair.

In July 1987, AT & T held a meeting to discuss the Optican 1 repair mission at its New Jersey offices. Jean Genoux, the "Chef de Mission" of the *N/C Leon Thevenin* Optican 1 mission attended this meeting. At this time the *N/C Leon Thevenin* was on standby status in Wilmington, North Carolina. In September 1987, the ACMA released the *N/C Leon Thevenin* from standby status and called it to Newington, New Hampshire, so that the new cable could be loaded. From there, the vessel proceeded to Port Covington, Maryland where AT & T and Bell Lab personnel loaded equipment, engineers, and crew. The *N/C Leon Thevenin* then sailed to the Canary Islands to complete its mission.

Leslie Gerding boarded the *N/C Leon Thevenin* in October 1987 when the boat was anchored off the coast of the Canary Islands. She did not tell the captain, the

* The French defendants include: The Republic of France, the Ministere des Postes et des Telecommunications et de la Telediffusion (now designated the Minstere des Postes, des Telecommunications et de l'Espace), the Direction des Telecommunications du Reseau Exterieur, the Direction des Telecommunications Sous–Marines, France Cables et Radio, S.A., the Compagnie Francaise des Cables Sous Marines (now the Compagnie Generale des Communications, S.A. ("COGECOM")) and the *N/C Leon Thevenin.*

The Gerdings also named AT & T, Bell Labs, and Transoceanic Cable Ship Company, Inc. as defendants. The Gerdings settled with these three defendants. The remaining defendants, who are not involved in the present appeal, are Claude Voiry, M.D.; the Atlantic Cable Maintenance Association (ACMA); and Compania Telefonica Nacional de Espana, a/k/a CTNE (Telefonica).

chef de mission, or other ship personnel that she was diabetic. During its mission, the ship encountered rough weather and Gerding became very seasick. On October 27, 1987, Leslie Gerding was admitted to the ship's infirmary. Early the next morning, Leslie Gerding died.

The Gerdings then brought this action against the French defendants alleging their liability for Leslie Gerding's death under the Jones Act, the Death on the High Seas Act, and the general maritime law of unseaworthiness. The basic theory of the claim against the French defendants was that chef de mission Genoux should have told AT & T representatives at the New Jersey meeting that he needed the medical records of Bell Lab employees who would be aboard the *N/C Leon Thevenin*; and that in consequence of his negligent failure to do so, Leslie Gerding's condition was not known and resulted in inadequate treatment on board the *N/C Leon Thevenin*. As indicated, the district court dismissed the action as to the French defendants on the basis that they were immune under the FSIA.

This appeal followed.

## II

■ The Gerdings first contend that the district court abused its discretion by ruling on the French defendants' motion to dismiss without any discovery having been conducted against those defendants. Specifically they contend that the district court's ruling on immunity was premature, given that they had not conducted discovery on such issues as whether certain French defendants were really instrumentalities of the French government, whether there were any more contacts between the French defendants and the United States, and the nature of Jean Genoux's responsibilities both at the New Jersey meeting and on board the *N/C Leon Thevenin*.

However, the Gerdings never sought discovery against the French defendants in the district court. This is not a case where the district court arbitrarily denied plaintiffs' discovery requests; rather the district court proceeded to rule on the motion to dismiss without any discovery efforts or requests having been made. Although the Gerdings acknowledge that they did not request any discovery in the district court, they claim that the record did not contain sufficient information for the district court to rule on the FSIA issue. The Gerdings contend that under these circumstances, justice requires that we should remand the case to the district court to permit them to make the discovery they identify as critical to ruling on the immunity defense. We disagree.

In *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976), the Supreme Court made the point critical to the fair conduct of adversarial proceedings that "[i]t is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." 428 U.S. at 120, 96 S.Ct. at 2877. And we have held in furtherance of that critical principle of our litigation system, that "[q]uestions not raised and properly appealed in the trial forum will not be noticed on appeal, in the absence of exceptional circumstances." *United States v. One 1971 Mercedes Benz*, 542 F.2d 912, 915 (4th Cir.1976). This case does not present such "exceptional circumstances." Although the Gerdings deny the French defendants' suggestion that the Gerdings did not seek discovery because they thought the record was sufficient as it stood to withstand an FSIA defense, they do not offer any alternative explanation for their failure to pursue any discovery against the French defendants. The Gerdings did conduct extensive discovery of the domestic defendants, and through that discovery learned about the relevant circumstances surrounding Leslie Gerding's death. The nature of the French defendants' participation in the mission during which Leslie Gerding died was apparent from the record developed through discovery of the domestic defendants and the French defendants' own declarations and affidavits.

We conclude that under these circumstances, the district court did not abuse its discretion by ruling on the French defendants' motion to dismiss in the absence of

any discovery of those defendants on matters relevant to their immunity defense.

### III

■ The Gerdings then contend that even on the record before it, the district court erred in finding the French defendants immune to this action.

The first question in assessing an immunity defense under the FSIA is whether the particular defendants qualify as "foreign states" within the meaning of 28 U.S.C. § 1603. That statute provides in relevant part:

(a) A "foreign state," ..., includes a political subdivision of a foreign state or any agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603. The district court concluded that all of the French defendants fit this definition of foreign state. The Gerdings point to nothing in the record before the court that suggests any error in the court's ruling on this threshold matter. Their only contention is that discovery might have uncovered information that would draw the ruling in question. But that possibility, as we have held in Part II, has simply been foreclosed by the Gerdings' own litigation strategy. We therefore affirm the court's conclusion on this threshold point.

The next issue is whether the foreign state defendant has immunity from suit in the United States courts. Under 28 U.S.C. § 1604,

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

Thus a foreign state is immune under FSIA unless one of the exceptions is applicable. The Gerdings rely upon the "commercial activity" exception provided in § 1605(a)(2) to avoid the French defendants' immunity defense. We conclude that the district court did not err in finding the exception not applicable.

■ At the outset, the Gerdings contend that the district court erred by placing upon them the burden of establishing subject matter jurisdiction, i.e., of disproving immunity. They cite *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 n. 5 (6th Cir.1988) in which the Sixth Circuit quoted the House of Representatives Report on the FSIA, which provided:

[T]he burden will remain on the foreign state to produce evidence in support of its claim of immunity. Thus, evidence must be produced to establish that a foreign state or one of its subdivisions, agencies or instrumentalities is the defendant in the suit and that the plaintiff's claim relates to a public act of the foreign state—that is, an act not within the exceptions in sections 1605–1607. Once the foreign state has produced such prima facie evidence of immunity, the burden of going forward would shift to the plaintiff to produce evidence establishing that the foreign state is not entitled to immunity. The ultimate burden of proving immunity would rest with the foreign state.

*Id. quoting* H.R.Rep. No. 1487, 94th Cong., 2d Sess. 1, 17, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6616. Although the district court may not have specifically mentioned this burden-shifting process, we think it was properly applied. Under that process, the French defendants' motion to dismiss with its attached declarations effectively shifted the burden to the Gerdings to identify materials of record showing that the defendants were not enti-

tled to immunity, i.e., that the commercial activity exception did apply. The French defendants' motion with attachments actually went further than was required to carry their initial production burden. Their attachments easily established prima facie that they fit the "foreign state" definition; they also showed prima facie why each of the exceptions in the FSIA was inapplicable. They need only have done the former. As the Fifth Circuit recently explained:

> [t]he party seeking immunity has no obligation to affirmatively eliminate all possible exceptions to sovereign immunity. Once a party demonstrates to the district court that it is a "foreign state" potentially entitled to immunity under the FSIA, the burden shifts to the opposing party to raise the exceptions to sovereign immunity and assert at least some facts that would establish the exceptions.

*Stena Rederi AB v. Comision de Contratos del Comite*, 923 F.2d 380, 390 n. 14 (5th Cir.1991). Here, the issue on which immunity turned, whether the commercial activity exception applied to avoid the defense of immunity that had been prima facie established, was clearly before the court by virtue of the French defendants' anticipatory avoidance of its application (along with that of all other exceptions), and the Gerdings' specific and sole reliance upon it in their opposition to the motion to dismiss. And on this dispositive issue, the defendants did have the ultimate burden of persuasion. We think the district court properly found, with due regard for the burden's cast, that on the record before it the commercial activity exception did not apply, hence that immunity was established.

That exception is expressed in § 1605(a)(2):

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—...
>
> > (2) in which the activity is based upon a commercial activity carried on in the United States by the foreign state;
> >
> > . . . .

Sections 1603(d) and 1603(e) define "commercial activity" for the purposes of the FSIA:

> (d) A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.
>
> (e) A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having *substantial contact* with the United States.

28 U.S.C. §§ 1603(d), (e) (emphasis added). In addition to the express requirement that the commercial activity have "substantial contact" with the United States, the FSIA has been interpreted to also require a nexus between the commercial activity in the United States and the plaintiff's cause of action. *Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne de Navigation*, 730 F.2d 195, 202 (5th Cir.1984). We agree that this is implicit in the statute.

Applying these provisions, the district court concluded that on the undisputed facts of record before the court, the commercial activity of the French defendants in the United States upon which the Gerdings relied was so "isolated and transitory," that it did not meet either the substantial contact or the nexus requirement. We can find no error in this determination.

The commercial activity relied on by the Gerdings included chef de mission Jean Genoux's attendance at the July 1987 planning meeting in Morristown, New Jersey; the *N/C Leon Thevenin*'s presence at the Wilmington, North Carolina port; the loading of cable onto the *N/C Leon Thevenin* at AT & T's facility in Newington, New Hampshire; and the *N/C Leon Thevenin*'s presence at Port Covington, Maryland where it picked up AT & T engineers and a new French crew. The Gerdings also argue that the *N/C Leon Thevenin* must have entered into commercial contracts

while it was docked at Wilmington and at other United States ports.

When the district court examined these contacts it found that the Gerdings had not satisfied the due process "minimum contacts" standard, much less the FSIA's "substantial contacts" requirement. *See Zedan v. Kingdom of Saudi Arabia,* 849 F.2d 1511, 1513 (D.C.Cir.1988) ("We have previously held, moreover, that this substantial contact requirement is stricter than that suggested by a minimum contacts due process inquiry...."). The legislative history of the FSIA supports the district court's analysis. The House Report describes "substantial contact" as including

cases based on commercial transactions performed in whole or in part in the United States, import-export transactions involving sales to, or purchases from, concerns in the United States, business torts occurring in the United States ... and an indebtedness incurred by a foreign state which negotiates or executes a loan agreement in the United States, or which receives financing from a private or public lending institution located in the United States....

H.R.Rep. No. 94–1487, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6615–16.

Here, Genoux's attendance at the New Jersey meeting and the activities of the *N/C Leon Thevenin* were in furtherance of the ACMA and the particular mission that AT & T was undertaking for Spain's Telefonica. It was not the French defendants' commercial decision to use the *N/C Leon Thevenin* in the United States; rather the ship was in Wilmington only because that was the zone assigned to it by the ACMA. Genoux's attendance at the New Jersey meeting is insufficient to show substantial commercial activity of the French defendants within the United States, because the meeting apparently concerned planning a mission by the ACMA to repair a Spanish cable on the high seas. The actual commercial activity being planned was not going to take place in the United States. As the District of Columbia Circuit recently held, "[n]othing in the legislative history

suggests, however, that Congress intended jurisdiction under the first clause to be based upon acts that are not themselves commercial transactions, but that are mere precursors to commercial transactions." *Zedan,* 849 F.2d at 1513; *see also Maritime International Nominees Establishment v. Republic of Guinea,* 693 F.2d 1094, 1109 (D.C.Cir.1982) (holding that two business meetings in the United States were not "more than 'transitory' and 'insubstantial' contact for purposes of the Act [FSIA], ... especially given their uncertain scope and importance").

Moreover, even if the Gerdings had satisfied the "substantial contact" requirement, they still would not be able to fulfill the FSIA's nexus requirement. As the Fifth Circuit recently explained,

We do not suggest that the commercial activities exception requires a *direct causal* connection.... Nonetheless, the connection between the cause of action and the sovereign's commercial acts in the United States must be *material.* Isolated or unrelated commercial actions of a foreign sovereign in the United States are insufficient to support a commercial activities exception to sovereign immunity.

*Stena Rederi,* 923 F.2d at 387 (citations omitted). The Gerdings contend that Genoux's attendance at the New Jersey meeting and his failure to ask for medical records of Bell Labs employees was directly connected to their cause of action against the French defendants. However, the Gerdings can point to no matters of record suggesting that Genoux had any duty or obligation to ask for medical records at all, or that the New Jersey meeting would have been the place to ask for such records. Apparently this meeting was held to plan the technical aspects of the upcoming mission. The Gerdings have not shown that this meeting had a material connection with Leslie Gerding's death.

In addition, the contacts that involve the *N/C Leon Thevenin*'s presence in United States waters have no material connection with the Gerdings' cause of action. The Gerdings' case has nothing to do with the

*N/C Leon Thevenin*'s stops at ports in New Hampshire and Maryland to pick up equipment and crew. Even if the Gerdings could show that the *N/C Leon Thevenin* entered into numerous commercial contracts while it was berthed at United States ports, these contracts would not have any connection to Leslie Gerding's death.

### IV

In sum, we hold first that the Gerdings have not shown that their case presents the "exceptional circumstances" that warrant remand to the district court to allow pursuit of previously unsought discovery. And on the merits we conclude that on the record before it, the district court did not err in determining that the French defendants were entitled to immunity under the FSIA.

AFFIRMED.