**Takey CRIST, et al., Plaintiffs,**

v.

**The REPUBLIC OF TURKEY, Defendant.**

**Civil No. 93–2605(RCL).**

United States District Court, District of Columbia.

Jan. 23, 1998.

Nicholas George Karambelas, Washington, DC, for Plaintiffs.

George J. Terwilliger, McGuire, Woods, Battle & Boothe, LLP, Washington, DC, David Samuel Saltzman, Saltzman & Evinch, Washington, DC, for Defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on the various motions filed in this case by the parties after remand from the Court of Appeals. On May 2, 1997, plaintiffs filed a Motion to Amend Complaint. On June 6, 1997, defendant filed a Motion for a More Definite Statement and a Motion to Dismiss the Amended Complaint. In response to the filings of the defendant, on June 20, 1997, plaintiffs filed a Motion for Jurisdictional Discovery and a Motion to Hold in Abeyance a Ruling on Defendant's Motions for a More Definite Statement and to Dismiss the Amended Complaint. Upon consideration of the submissions of the parties and the relevant law, plaintiffs' motions for jurisdictional discovery and to amend their complaint are denied, and this case shall remain dismissed with prejudice.

## I. Background

As an initial matter, plaintiffs' factual allegations will be presumed true and should be liberally construed in favor of plaintiffs. *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C.Cir.1979) (citing *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977)). Plaintiffs Takey Crist, Eugene Rossides, and Daniel Rossides are United States citizens of Greek descent who hold title to real property on the island of Cyprus. The properties owned by plaintiffs are located in the northern part of

the island and, according to plaintiffs, are currently occupied or otherwise controlled by Turkish military forces. Plaintiffs sued the Republic of Turkey, alleging that Turkey had wrongfully taken their property without compensation and seek damages totaling $7.5 million.

The tumultuous history of this Mediterranean island sets the backdrop of this current litigation. Prior to its annexation to Great Britain, Cyprus was controlled largely by the Ottoman Turks for several hundred years. In the late nineteenth century, Great Britain acquired Cyprus from the Ottoman Empire by agreement and in 1925, Cyprus became a Crown Colony of Great Britain. While an ethnic Turkish minority had established itself on Cyprus during the years of Ottoman rule, the dominant ethnic and demographic character. of Cyprus during the colonial years remained Greek. A Greek Cypriot movement for union with Greece accelerated after World War II, punctuated by acts of terrorism and violence directed against Turkish Cypriot and British opponents, while the Turkish minority pressed for partition between Greek and Turkish Cypriots. After several years of armed strife, Greece, Turkey, and Great Britain concluded three treaties separately entitled the Treaty of Establishment, the Treaty of Guaranty, and the Treaty of Alliance (collectively referred to as "the London–Zurich Agreements of 1959–1960"). A compromise joint government with majority Greek representation was approved in 1959, and one year later, Cyprus became an independent republic.

Despite its independent status, the movement for unification with Greece and accompanying violence continued. In July 1974, the military government in Greece instigated a coup against the Greek Cypriot President of Cyprus and replaced him with a functionary of their choosing. In reliance on the Treaty of Guaranty, Turkish forces invaded Cyprus and by the time hostilities had been quelled one month later through the establishment of a cease-fire, Turkey occupied the northern one-third of the island. The Turkish Cypriots established a functioning government in 1975 as the Turkish Federated State of Cyprus and in 1983, the state de-

clared itself the independent nation of the Turkish Republic of Northern Cyprus. Although the Turkish Republic in Cyprus has sought to gain diplomatic recognition from the world community, to date, no nation other than Turkey has granted any such recognition. Indeed, the community of nations, including the United States, continues to recognize the Republic of Cyprus as the only sovereign power on the island of Cyprus.

The Turkish invasion and ultimate division of Cyprus has resulted in the forced separation and displacement of ethnic communities on the island. After the Turkish invasion, the Turkish army forcibly expelled Greek Cypriots and foreign nationals of Greek Cypriot descent from the Turkish occupation zone. As a result of this expulsion, these individuals were displaced and excluded from real property in the Turkish occupation zone to which they held proper title under the laws of the Republic of Cyprus. As stated, plaintiffs assert that they own title to real property located in the portion of Cyprus now under the control of Turkish Cypriots.

In their complaint, plaintiffs allege that in 1974, the local authorities established a committee that purported to handle the claims of foreign nationals to real property in the Turkish occupation zone. Plaintiffs contend that the committee expressly refuses to hear the claims of any foreign national of Greek descent and therefore, they are unable to obtain compensation for their displacement from their real property through any local remedy. For this reason, plaintiffs filed suit in this court against the Republic of Turkey alleging that Turkey has wrongfully taken their property without compensation. As Turkey is a sovereign nation, plaintiffs must premise jurisdiction on certain provisions found in the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. §§ 1330, 1602 *et seq.* (1994).

In an order dated May 12, 1995, this court granted Turkey's motion to dismiss this suit with prejudice on the grounds that plaintiffs' claims were time-barred by the applicable statute of limitations. On appeal, the Court of Appeals vacated this court's order. *Crist, et al. v. Republic of Turkey,* 107 F.3d 922, 1997 WL 71739 (D.C.Cir. 1997). The Court

of Appeals concluded that the facts, as alleged by plaintiffs, precluded this court and the Court of Appeals from exercising jurisdiction over their claims in light of the holding in *Transaero, Inc. v. La Fuerza Aerea Boliviana,* 30 F.3d 148 (D.C.Cir.1994). The Court of Appeals remanded the case to this court to determine whether plaintiffs should be allowed to amend their complaint to allege a different ground for jurisdiction, and if so, whether jurisdiction over these claims exists under the FSIA.

Plaintiffs moved this court to amend their complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure and for jurisdictional discovery. Plaintiffs' motions are denied as it is this court's conclusion that jurisdictional discovery is unwarranted and any amendment to plaintiffs' complaint would be futile. This court does not have subject matter jurisdiction over the Republic of Turkey in this case, and this case shall therefore remain dismissed with prejudice.

## II. *Analysis*

### *Plaintiffs' Motion to Amend Their Complaint*

Rule 15(a) of the Federal Rules of Civil Procedure states in relevant part that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party ... and leave shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). In *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court defined the term "when justice so requires" and explained that "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... *futility of amendment,* etc.—the leave sought should, as the rules require, be 'freely given.' " *Id.* at 182 (emphasis added). Accordingly, "[w]ithin these bounds, a district court has discretion to grant or deny leave to amend under Rule 15(a)." *Atchinson v. District of Columbia,* 73 F.3d 418, 426 (D.C.Cir.1996). *See also Foman,* 371 U.S. at 182 ("[T]he grant or denial of an opportunity to amend is within

the discretion of the District Court, but outright refusal to grant leave without any justifying reason ... is not an exercise of discretion."); *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir.1996) (indicating that the granting or denial of leave to amend is committed to the district court's discretion).

█ As the Supreme Court stated in *Foman,* a motion to amend a complaint should be denied when such an amendment would be futile. "It has been repeatedly held that an amended complaint as 'futile' if the complaint as amended would not survive a notion to dismiss." *Monroe v. Williams,* 705 F.Supp. 621, 623 (D.D.C.1988) (citing *Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.1983)). *See also Graves v. United States,* 961 F.Supp. 314, 317 (D.D.C. 1997) ("A motion to amend the Complaint should be denied as 'futile' if the complaint as amended could not withstand a motion to dismiss.")

In the instant case, the Republic of Turkey asserts that plaintiffs' motion to amend their complaint should be denied as futile. Specifically, the Republic of Turkey contends that plaintiffs' proposed amended complaint does not provide sufficient jurisdictional facts to support either subject matter or personal jurisdiction and thus, the Republic of Turkey is immune from suit under the FSIA. In light of these contentions, the Republic of Turkey filed a motion opposing plaintiffs' motion to amend and a motion to dismiss the complaint.

█ When considering a motion to dismiss, a district court must accept the allegations of the complaint as true and construe all inferences in the plaintiffs' favor. *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020, 1027–28 (D.C.Cir. 1997); *Foremost–McKesson v. Islamic Republic of Iran,* 905 F.2d 438, 440 n. 3 (D.C.Cir.1990). "Where the motion to dismiss is based on a claim of foreign sovereign immunity, which provides protection from suit and not merely a defense to liability ... the court must engage in sufficient pretrial factual and legal determinations to satisfy itself of its authority to hear the case before trial." *Jungquist,* 115 F.3d at 1027–28 (quo-

tations omitted). In consideration of the arguments presented by the Republic of Turkey, plaintiffs' proposed amended complaint must be examined to determine whether it may withstand a motion to dismiss in light of the appropriate jurisdictional provisions of the FSIA.

### A. The Retroactivity of the FSIA

The FSIA was enacted in 1976 and "provides the sole basis for obtaining jurisdiction over a foreign state in a federal court." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). The enactment of the FSIA reflects a substantial codification of the restrictive theory of sovereign immunity by Congress. *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1169 (D.C.Cir.1994); *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 241 (2d Cir.1994); *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 706 (9th Cir.1992) ("In essence, the FSIA codified the restrictive theory of sovereign immunity which had become widely accepted in international law."). Under the restrictive theory of immunity, immunity is confined to the sovereign or public acts undertaken by the sovereign and does not extend to its commercial or private acts.

In the instant case, the Republic of Turkey contends that if it is concluded that the FSIA does not apply retroactively, then Turkey should be immune from suit in this case according to the restrictive theory of jurisdiction that was in place at the time of the alleged expropriation of plaintiffs' property in 1974. Neither the Supreme Court nor the Court of Appeals for the District of Columbia Circuit has determined whether the FSIA is to be applied retroactively. The Court of Appeals has strongly suggested that the FSIA should be applied to all cases decided after its enactment. *Princz*, 26 F.3d at 1170 ("There is a strong argument in favor of applying the FSIA retroactively."). As the Court of Appeals noted, in declaring the purpose of the FSIA, Congress directed that "[c]laims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity

with the principles set forth in this chapter." *Id.* at 1170 (quoting 28 U.S.C. § 1602).

The Court of Appeals reasoned that retroactivity was further supported by the deletion from 28 U.S.C. § 1332 the provision for diversity jurisdiction over suits brought by a Untied States citizen against a foreign government. *Id.* The House Report on the FSIA specified that "since jurisdiction in actions against foreign states is comprehensively treated by the new section 1330, a similar jurisdictional basis under section 1332 becomes superfluous." H.R.Rep. No. 94–1487, 94th Cong.2d Sess. 14 (1976). The Court of Appeals concluded:

Unless one is to infer that the Congress intentionally but silently denied a federal forum for all suits against a foreign sovereign arising under federal law that were filed after enactment of the FSIA, but based upon pre-FSIA facts, the implication is strong that all questions of foreign immunity, including those that involve an act of a foreign government taken before 1976, are to be decided under the FSIA.

*Princz*, 26 F.3d at 1170.

In light of the conclusions drawn by the Court of Appeals in *Princz* and a plain reading of the statutory language and legislative history of the FSIA, this court is satisfied that Congress intended the FSIA to be applied retroactively. Therefore, the alleged expropriation of plaintiffs' property must be examined under the statutory provisions of the FSIA.

### B. Subject Matter Jurisdiction Under the Foreign Sovereign Immunities Act

The FSIA provides that "[s]ubject to existing international agreements to which the Untied States is a party at the time of the enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 or this chapter." 28 U.S.C. § 1604. The FSIA "sets forth the general rule that foreign states are immune from the jurisdiction of both federal and state courts in the United States, subject to certain exceptions." *Siderman de Blake*, 965 F.2d at 706 (citing 28

U.S.C. §§ 1330(a), 1604). *See also Jungquist*, 115 F.3d at 1027; *Princz*, 26 F.3d at 1169 ("Under the Act, the general rule is that of sovereign immunity, subject to various statutory exceptions."). As such, federal courts lack subject matter jurisdiction over a claim against a foreign state unless the claim falls within a stated exception to immunity under the FSIA. 28 U.S.C. §§ 1330(a), 1603(a), 1605–1607. *See also Argentine v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989); *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983) (indicating that a court must dismiss any case in which it cannot "satisfy itself that one of the exceptions applies"); *Foremost–McKesson*, 905 F.2d at 442 ("District courts in a civil action against a foreign state ... lack subject matter jurisdiction unless one of the exceptions to immunity applies.").

It is presumed that "under the FSIA ... actions taken by foreign states or their instrumentalities are sovereign acts and thus protected from the exercise of [the court's] jurisdiction, unless one of the exceptions to FSIA applies." *West v. Multibanco Comermex, S.A.*, 807 F.2d 820, 824 (9th Cir.1987) (citing 28 U.S.C. § 1605(a)(1–5) & (b)). Thus, once a defendant establishes that it is a sovereign state and that the plaintiffs' claims arise out of a public act, plaintiffs have the burden of going forward with the evidence by offering proof that one of the FSIA exceptions applies. After plaintiffs have presented such evidence, the defendant must prove its entitlement to immunity by a preponderance of the evidence.[1]

In this case, it is undisputed that the Republic of Turkey is a foreign sovereign and that the acts complained of by plaintiffs were public acts. This establishes a presumption that Turkey is protected from suit under a grant of sovereign immunity. Under the

burden-shifting process contemplated by the Act, plaintiffs are required to come forward with evidence that the foreign state is not entitled to immunity by invoking one of the exceptions to immunity found in the FSIA. Plaintiffs' proposed amended complaint asserts that the FSIA exception set forth in the first disjunctive of section 1605(a)(3), referred to as the "takings" or "expropriation" exception[s], applies to their claims and support this court's exercise of jurisdiction.

### 1. The "Takings" Exception Under Section 1605(a)(3)

■ The first disjunctive of section 1605(a)(3) of the FSIA provides that a foreign state shall not be immune from suit in any case:

in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by a foreign state.

28 U.S.C. § 1605(a)(3). As the language of this statute makes clear, the property at issue must have been taken in violation of international law and there must be a jurisdictional nexus between the property and the United States, namely the property, or property derived therefrom, must be present in the United States in connection with a commercial activity carried on in the United States by the foreign state. *de Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1395 & n. 12 (5th Cir.1985).

■ An expropriation is a violation of international law if the taking is not for public purpose, is discriminatory, or does not provide for just compensation. *Siderman de Blake*, 965 F.2d at 711; Restatement (Third) of the Foreign Relations Law of the United

---

**1.** The House report on the FSIA reflects Congress' intent to create a burden-shifting process when foreign states plead a defense of immunity under the FSIA.

> [The FSIA] starts from a premise of immunity and then creates exceptions to the general principle.... Once the foreign state has produced [ ] *prima facie* evidence of immunity, the burden of going forward [ ] shift[s] to the plaintiff to produce evidence establishing that

the foreign state is not entitled to immunity. The ultimate burden of proving immunity rest[s] with the foreign state.

H.R.Rep. No. 1487, 94th Cong.2d Sess. 17 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6616. *See also Gerding v. Republic of France*, 943 F.2d 521, 525 (4th Cir.1991); *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 n. 5 (6th Cir.1988).

States § 712 (1987). At the jurisdictional stage, a court is not required to determine whether a taking or expropriation actually violated international law. The claim must merely be substantial and non-frivolous to provide a sufficient basis for jurisdiction. *Siderman de Blake,* 965 F.2d at 711. Plaintiffs allege that they were dispossessed of their land by the Republic of Turkey without just compensation. It is well-settled that such a claim is sufficient for purposes of alleging that the taking violated international law. Therefore, this court has no difficulty in reaching the conclusion that this allegation is neither insubstantial nor frivolous.

### 2. *Plaintiffs' Proposed Amended Complaint and Subject Matter Jurisdiction Under § 1605(a)(3)*

Beyond establishing that property has been taken in violation of international law, plaintiffs must demonstrate that the expropriated property, or property exchanged for it, is owned or operated by an agency or instrumentality of the Republic of Turkey and that either the Republic of Turkey or its agent or instrumentality are engaged in a commercial activity in the United States with respect to the property. Plaintiffs initially sought to base subject matter jurisdiction on the second disjunctive of section 1605(a)(3). The Court of Appeals rejected this as a basis of jurisdiction after consideration of the facts of this case, but suggested that "[plaintiffs] may be able to allege another basis for jurisdiction under the FSIA ..." *Crist,* No. 95–7149 at 1. In response to this invitation, plaintiffs filed their motion to amend their initial complaint. Plaintiffs now seek to premise jurisdiction exclusively on the first disjunctive of section 1605(a)(3). After consideration of this alternate theory of jurisdiction, it is this court's conclusion that plaintiffs' proposed amended complaint still fails to plead jurisdictional facts sufficient to show that this court has subject matter jurisdiction under section 1605(a)(3).

Reference to the proposed amended complaint reveals that plaintiffs have merely affixed the phrase "Upon information and belief" to the first disjunctive clause of section 1605(a)(3). Thus, paragraph 7 of plaintiffs' proposed amended complaint, and the sole basis under which plaintiffs assert jurisdiction in this case, reads "Upon information and belief, property exchanged for the property owned by Plaintiffs in the Republic of Cyprus is present in the United States in connection with a commercial activity carried on in the United States by Turkey." Pl.s' Proposed Amended Compl. at ¶ 7.

■ Plaintiffs' complaint is devoid of any facts demonstrating that this exception to immunity applies to their claims thereby establishing subject matter jurisdiction and fails to meet either of the two remaining jurisdictional requirements found in the first disjunctive of section 1605(a)(3). Plaintiffs have failed to identify what rights in property were taken in violation of international law, including the location and description of the allegedly dispossessed property. Similarly, the complaint as amended does not specify what property or property exchanged for such property is present in the United States or in connection with what commercial activity carried on by the Republic of Turkey the alleged property is present in the United States. *See Dayton v. Czechoslovak Socialist Republic,* 834 F.2d 203, 205–06 (D.C.Cir. 1987) (indicating that section 1605(a)(3) is inapplicable where plaintiff failed to identify property at issue in the United States nor any property exchanged therefor).

Plaintiffs' mere allegation that the proceeds derived from their real property located in Cyprus are now somehow connected to some unidentified commercial activity conducted by the Republic of Turkey in the United States is simply not sufficient to satisfy the jurisdictional requirements under the FSIA. Other than the bald assertions in their complaint, plaintiffs have failed to set forth any facts which would lead this court to conclude that the Republic of Turkey operates or controls any property to which plaintiffs hold real title that is related to any commercial activity undertaken by Turkey in the United States. The connection that plaintiffs would have this court draw is simply too tenuous to support their theory of jurisdiction.

### C. Plaintiffs' Request for Jurisdictional Discovery

Plaintiffs contend that, having alleged jurisdiction under the expropriation exception of the FSIA, they are entitled to pursue discovery to support their allegations. *See, e.g., Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir.1992); *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332–33 (2d Cir. 1990); *Foremost–McKesson*, 905 F.2d at 449; *Gould*, 853 F.2d at 451.

This court is mindful that sovereign immunity is a critical preliminary determination of subject matter jurisdiction and that the parties should be permitted a fair opportunity to engage in jurisdictional discovery so as to adequately define and submit to the court facts necessary for a thorough and complete consideration of the issue. *Foremost–McKesson*, 905 F.2d at 449; *Gould*, 853 F.2d at 451. Typically, the discretion of a district court to allow jurisdictional discovery in FSIA cases is limited to those instances where the facts sought are peculiarly within the knowledge of the party against whom discovery is sought. *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986). However, such discovery should be "limited to the essentials necessary to determining the preliminary question of jurisdiction." *Gould*, 853 F.2d at 451.

While the court recognizes that plaintiffs encountering a motion to dismiss on the basis of foreign sovereign immunity have a right to conduct preliminary discovery, *see, e.g., Filus v. Lot Polish Airlines*, 907 F.2d 1328 (2d Cir.1990) (reversing dismissal of plaintiff's claims under the FSIA as the district court did not have sufficient information to determine whether the FSIA exceptions applied); *Foremost–McKesson*, 905 F.2d at 449 (reversing denial of motion to dismiss because a dearth of fact-finding); *Gilson v. Republic of Ireland*, 682 F.2d 1022, 1026 (D.C.Cir.1982) (reversing dismissal of plaintiff's claims for lack of jurisdiction under the FSIA because "the facts as alleged—and generously interpreted [made] a dismissal at least premature in light of the dearth of fact-finding done by the district court"); *Greenpeace, Inc. (U.S.A.) v. State of France*, 946 F.Supp. 773, 789 (C.D.Cal.1996) ("It is an abuse of discre-

tion to dismiss for lack of subject matter jurisdiction without giving plaintiff reasonable opportunity, if requested, to conduct discovery for this purpose."), this right is not absolute.

Jurisdictional discovery should not be ordered when to do so "would 'frustrate the significance and benefit of entitlement to immunity from suit.'" *El–Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C.Cir.1996) (quoting *Foremost–McKesson*, 905 F.2d at 449). In this regard, it is recognized that a tension exists between "permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery." *Arriba*, 962 F.2d at 534.

Courts have attempted to fashion various threshold requirements that plaintiffs seeking jurisdictional discovery must satisfy prior to allowing such discovery to go forward. In *Arriba*, the Court of Appeals for the Fifth Circuit indicated that jurisdictional discovery should be permitted "only to *verify allegations of specific facts* crucial to an immunity determination." 962 F.2d at 534 (emphasis added). Similarly, jurisdictional discovery should be permitted only "if it is possible that the plaintiff could demonstrate the requisite jurisdictional facts sufficient to constitute a basis for jurisdiction" and it should not be allowed when discovery would be futile. *Greenpeace*, 946 F.Supp. at 789 (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989). *See also Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C.Cir. 1994)) (affirming dismissal for lack of subject matter jurisdiction over objections of plaintiff that additional discovery would uncover jurisdictional facts because no additional discovery would alter the Court of Appeals jurisdictional analysis). Requests for jurisdictional discovery should be granted only if the plaintiff presents "non-conclusory allegations that, if supplemented with additional information, will materially affect the court's analysis with regard to the applicability of the FSIA." *Millicom Int'l Cellular, S.A. v. Republic of Costa Rica*, 1997 WL 527340, *4 (D.D.C. Aug.18, 1997). While no bright-line standard exists, plaintiffs have not provided this court *any* basis upon which to grant their request for jurisdictional discovery.

■ Plaintiffs' request for jurisdictional discovery provides this court with nothing more than conjecture and surmise in support of their jurisdictional theory. As stated, the FSIA requires plaintiffs to establish that the property at issue was taken in violation of international law and that a jurisdictional nexus exists between the expropriated property or property derived therefrom and commercial activity engaged in by the foreign sovereign and occurring in the United States. To satisfy this jurisdictional nexus, plaintiffs must demonstrate that the property or any property derived therefrom is present in the United States *and* that the property or property exchanged for the property is present in the United States in connection with a commercial activity carried on in the United States by the Republic of Turkey. Plaintiffs aver that they cannot meet this burden without the benefit of jurisdictional discovery. Inability to obtain jurisdictional facts alone is not sufficient to mandate jurisdictional discovery. As stated, jurisdictional discovery should be permitted "only to verify allegations of specific facts." *Arriba,* 962 F.2d at 534.

■ A consideration of plaintiffs' motion for jurisdictional discovery demonstrates a clear lack of any allegation of specific facts supporting subject matter jurisdiction under the FSIA. Plaintiffs contend that portions of their property are suitable for agricultural purposes and therefore, the fruits of this property could enter the United States in the form of agricultural products. Pl.s' Mot. at 6. Plaintiffs also assert that if these products clear customs and enter into the stream of commerce in the United States, then concomitantly, money must be exchanged for the products and remitted back to either the person or the entity controlling plaintiffs' property. Plaintiffs express confidence that products from the Turkish occupation zone where their property is located enter the United States, but claim that they are unable to determine how much of that product is composed of the fruits of their property. This court does not share plaintiffs' confidence.

In essence, plaintiffs' request for jurisdictional discovery is premised on the belief that it is theoretically possible that their land could be used for agricultural purposes, theoretically possible for the fruits of this agricultural effort to enter into the United States, and theoretically possible for money to be remitted back to the unnamed person or entity controlling the land at issue. Plaintiffs are merely stacking one hypothetical upon another and with each additional hypothetical, the probability that their underlying contention has merit decreases exponentially. It is evident from consideration of these assertions that plaintiffs' claim of jurisdiction is groundless and strung together with a bare thread of speculation and the slimmest of hopes that jurisdictional discovery would unearth some fact to support their otherwise unsubstantiated allegations.

It is equally clear that plaintiffs have likewise failed to provide *any* specific facts supporting their theory that the fruits derived from their property are present in the United States in connection with a commercial activity conducted by the Republic of Turkey. Although plaintiffs have identified three companies that transact business in products or services from the Turkish occupation zone, plaintiffs have failed to allege that these companies deal in products or services derived from their property or that even one of these companies engages in any commercial activity involving the United States whatsoever.

The chasm that separates plaintiffs' jurisdictional allegations and what is actually required to justify jurisdictional discovery in FSIA cases is simply too immense to be bridged solely by plaintiffs' theories of the commercial activities that may be occurring in Cyprus. Plaintiffs have not alleged specific facts that would suggest a nexus between commercial activity involving their property, the Republic of Turkey's involvement in this activity, and commercial activity of the Republic of Turkey occurring in the United States. Permitting limited discovery pertinent to jurisdiction would not cure the FSIA jurisdictional deficiency in plaintiffs' arguments when there has not been even the remotest showing that such a nexus exists.

Jurisdictional discovery can only be characterized as inappropriate when plaintiffs "allege much less than they imply" in the way of commercial activity. *Arriba,* 962 F.2d at 534.

**14**

Sovereign immunity entails immunity from discovery when such discovery would "frustrate the significance and benefit of entitlement to suit." *Foremost–McKesson*, 905 F.2d at 449; *Gould*, 853 F.2d at 451. This is such a case. This court refuses to abrogate the Republic of Turkey's sovereign immunity in this case and plaintiffs' motion for jurisdictional discovery is denied.

III. *Conclusion*

As it is this court's conclusion that plaintiffs have failed to either allege facts supporting jurisdiction under the FSIA or demonstrate that jurisdictional discovery is warranted, plaintiffs' motion to amend their complaint and plaintiffs' motion for jurisdictional discovery are denied.

A separate order shall issue this date.

### ORDER

For the reasons stated in the accompanying memorandum opinion, it is hereby ORDERED that plaintiffs' motion to amend their complaint and plaintiffs' motion for jurisdictional discovery are DENIED. Defendant's motion to dismiss is DENIED as moot. The case shall remain dismissed with prejudice.

SO ORDERED.